**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

JUN 28 2016

ARTHUR JOHNSTON
BY_____ DEPUTY

**HOPE ELLY,**

    **Plaintiff,**

**v.**

**SBD, LLC, HALF SHELL OYSTER
HOUSE BILOXI, LLC, GULF COAST
RESTAURANT GROUP, INC., AND
ROBERT TAYLOR**

    **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION NO.**

1:16cv238 HSO-JCG

## COMPLAINT

**COMES NOW** the Plaintiff, Hope Elly hereinafter ("Plaintiff") by and through her undersigned counsel, and hereby files this Complaint against the Defendants for injunctive relief, attorney's fees and costs pursuant to 42 U.S.C. §12181, et. seq, ("the Americans with Disabilities Act") and states as follows:

## JURISDICTION, PARTIES, AND STANDING

1. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations. This Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Southern District of Mississippi, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Mississippi.

[1]

3. Plaintiff, Hope Elly, suffers from cerebrovascular accidents, which are more commonly known as strokes. These strokes have effected both her motor and sensory functions, which causes inactivity and/or paralysis of the muscles; therefore, maintaining balance, walking, and the ability to use her hands are extremely difficult. As a result of her disability, she relies on mobility aids for locomotion. The extent of Ms. Elly's physical problems limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, grab, twist, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Elly is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *See also,* 28 C.F.R. § 36.104.

4. Defendant, SBD, LLC, (hereinafter "SBD") is a Limited Liability Company that is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief, SBD, both "owns" the establishment located at 126 Lameuse St. Biloxi, MS 39531, and "leases [the property] to" the other Defendants. 42 U.S.C. § 12182. Pursuant to 42 U.S.C. § 12181(7) the restaurant is a place of public accommodation.

5. Defendants, Half Shell Oyster House Biloxi, LLC (hereinafter "Half Shell"), Gulf Coast Restaurant Group, Inc., (hereinafter "Gulf Coast") and Robert Taylor, (hereinafter "Bob Taylor") (collectively referred to as the "operators") are conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief, according to the Harrison County Probate Records, Half Shell, Gulf Coast, and

Bob Taylor "operate" the restaurant located at 126 Lameuse St., Biloxi, MS 39531. 42 U.S.C. § 12182. The restaurant is a place of public accommodation pursuant to 42 U.S.C. § 12181 (7).

6. All events giving rise to this lawsuit occurred in the Southern District of Mississippi and the Defendants are citizens thereof.

7. Plaintiff Hope Elly has visited Biloxi, Mississippi for years for its entertainment facilities. She visited there in 2016 and went to Half Shell Oyster House. Ms. Elly really enjoys the oysters, which she thinks are "great". She also likes the attempted New Orleans atmosphere as well as a place to have good oyster dishes in a little more upscale environment than a lot of oyster places. Ms. Elly specifically and definitely intends to continue to go to Half Shell Oyster House when she travels to Biloxi again. Ms. Elly does not know exactly when she will go back to Half Shell Oyster House, because she has not planned out every trip nor every meal for the rest of her life. Such specific planning is not necessary to invoke the ADA. See, *e.g. Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012)("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Ms. Elly definitely intends to return in the next year to Half Shell Oyster House not only to eat and drink, but also to see if Half Shell Oyster House will do the repairs to become ADA compliant. Ms. Elly will continue to return even after the repairs are made because Half Shell Oyster House has good food, especially its oysters.

8. Because of the barriers described below in paragraph 20 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendants' premises on the basis of her disabilities.

9. Ms. Elly accordingly, has standing to pursue this case because (1) she is disabled, pursuant to the statutory and regulatory definition; (2) the Defendants' food complex is a place of public accommodation, pursuant to the statutory and regulatory definition; and (3) she has been denied full and equal enjoyment of the Defendants' premises on the basis of her disabilities. As described more fully in paragraph 20, there exists a genuine threat of imminent future injury.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12182(b)(2)(A)(iv) and (v)**
**(All Defendants)**

10. On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq.  Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements.  The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

11. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendants' establishment is a place of public accommodation in that it provides food and drink for purchase to the public. Accordingly, it is covered by the ADA and must comply with the Act.

12. Plaintiff is informed and believes based on publicly available information, that

the building housing Half Shell Oyster House was first constructed in 1962. Publicly available information also establishes the building was retrofitted in 2011, yet massive ADA Title III barriers remain.

13. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

[5]

14. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012.

15. For the violations at issue in this case, both the 1991 and 2010 Standards for Accessible Design are identical for the parking lot, accessible route, maneuvering

[6]

clearance, paths of travel, and practice/policy violations.

16.  The Defendants have discriminated, and continue to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Half Shell in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv), where such removal is readily achievable, or, even if the removal is not readily achievable, by failing to use alternative methods that are readily achievable, 42 U.S.C. § 12182 (b)(2)(A)(v).

17.  As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendants' facility. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

18.  Plaintiff has definite plans to return to Half Shell in the future, as described above in paragraph 7. Plaintiff will return to Half Shell within the next year not only to eat and drink, but also to see if Half Shell has repaired the barriers, and changed its policies and procedures. Plaintiff will continue to do so. Even when Half Shell is repaired, Plaintiff will continue to dine there, as she has in the past visits to Biloxi. Absent remedial action by Defendants, Plaintiff will continue to

encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendants on the basis of her disabilities. The Eleventh Circuit, held in _Houston v. Marod Supermarkets_, when architectural barriers have not been remedied "*there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store.*" Due to the definiteness of Plaintiff's future plans to continue visiting the subject facility, there exists a genuine threat of imminent future injury.

19. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

20. Plaintiff has been throughout all the parking lot at the Facility and from the parking lot to the downstairs entrance, to and throughout the downstairs accessible route, from the downstairs entrance to and throughout the downstairs women's restroom, the restroom itself, from the entrances to and throughout the bar and dining areas downstairs and upstairs, the bar and dining areas themselves, to and throughout the access route to the second floor, throughout circulation paths and accessible routes, and in particular but not limited to all of which is more specifically described below. Moreover, Defendants' facility violates the ADA in the parking lot, entranceways, from the entranceways to and throughout the bar and dining areas, restroom, paths of travel, access routes, and in particular but not limited to:

[8]

**First Floor**

    **a.**   The facility provides a route from the parking lot to the entrance for able-bodied individuals, but fails to provide an ADA accessible route from the parking lot to the entrance for non-able-bodied individuals;

    **b.**   The facility provides parking spaces for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, including but not limited to the following:

          **i.**   The parking lots surface fails to be stable, firm, and slip resistant;

          **ii.**   There are no identified ADA accessible parking spaces including adjacent access aisles;

          **iii.**   There are no identified ADA van accessible parking spaces including adjacent access aisles;

          **iv.**   There is no signage displaying the international symbol of accessibility at any of the parking spaces;

          **v.**   There are no parking spaces that connect to the shortest accessible route to the entrance of the facility;

          **vi.**   The accessible route and/or parking spaces fail to be properly maintained;

          **vii.**   The purported ADA parking spaces do not have access aisles that connect to an accessible route to the entrance;

    **b.**   The facility provides parking spaces for able-bodied individuals, but fails to provide any ADA van accessible parking spaces for non-able-bodied individuals, including but not limited to the following:

[9]

      i.   There is no ADA van accessible signage identifying any parking spaces as "van" accessible.

     ii.   There is no ADA van access aisle that is 96 inches wide with a 96-inch-wide van space, or alternatively, 60-inch-wide access aisle with a 132-inch van space;

c.   The front entrance door operating mechanism requires the use of tight grasping, twisting, and/or pinching of the wrist;

d.   The facility provides an entrance for able-bodied individuals, but fails to provide an ADA accessible entrance with the proper floor and ground surfaces requirements, including but not limited to:

      i.   The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

     ii.   The facility fails to maintain the accessible features of the entrance that are required to be readily accessible to and usable by individuals with disabilities;

    iii.   The Half Shell provides a bench seating area for able-bodied individuals but fails to provide that same level of goods, services, privileges, advantages, and accommodation to individuals with disabilities by not providing any accessible seating in the waiting area.

e.   The facility fails to provide an accessible route to all of the dining areas for individuals with disabilities;

[10]

f.   The facility fails to maintain the accessible features of the accessible route that are required to be readily accessible to and usable by individuals with disabilities;

g.   The facility provides a hostess counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that dining experience afforded to other individuals without disabilities, including but not limited to:

   i.   The hostess counter fails to extend the same depth as the non-accessible portion of the service counter;

   ii.   The hostess counter exceeds the maximum allowed height of 36 inches above the finished floor;

   iii.   The facility fails to maintain the accessible features of the hostess service counter that are required to be readily accessible to and usable by individuals with disabilities;

h.   The ADA signage identifying the restroom fails to be properly located on the latch side of the door;

i.   When exiting the restroom there is not 18 inches of latch side clear floor space on the pull side of the door to give a wheel chair user the opportunity to approach the door;

**j.** When exiting the restroom, the trash can obstructs the required 60 inches of perpendicular clear floor space for a wheel chair user to exit the restroom;

**k.** The current practice at this facility is to locate the trash can in the 60 inches of required maneuvering clearance to exit the restroom which prohibits individuals with disabilities from having the same opportunity to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

**l.** The facility provides toilet compartments for able-bodied individuals, but fails to provide an ADA accessible toilet compartment for non-able-bodied individuals, including but not limited to the following elements:

    **i.** The toilet compartment door fails to be self-closing;

    **ii.** The toilet compartment door locking mechanism requires tight grasping, twisting, and/or pinching of the wrist;

    **iii.** The toilet compartment door fails to have door pulls located on both sides;

    **iv.** The approach to the wheelchair accessible toilet compartment door fails to meet the requirement of being located furthest from the water closet;

    **v.** The toilet compartment fails to meet the required dimensions of 60 inches wide by 59 inches deep;

[12]

vi. The centerline of the water closet exceeds the maximum allowed distance of 18 inches;

vii. The side wall grab bar fails to extend the required distance of 54 inches from the rear wall;

viii. The side wall grab bar exceeds the maximum required height of 36 inches above the finished floor;

ix. The toilet paper dispenser fails to meet the required distance of 1.5 inches below the gripping surface of the side wall grab bar;

x. The rear wall grab bar is not properly located 12 inches on the closed side of the toilet room and 24 inches on the transfer side;

xi. The rear wall grab bar exceeds the maximum allowed height of 36 inches above the finished floor;

xii. The facility provides a toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations at the facility;

m. The facility provides a lavatory for able-bodied individuals, but fails to provide an ADA accessible lavatory for non-able-bodied individuals, including but not limited to the following elements:

i. The bottom reflecting surface of the mirror exceeds the maximum allowed height of 40 inches above the finished floor;

[13]

        **ii.** The soap dispenser exceeds the maximum allowed obstructed reach range of 44 inches above the finished floor;

        **iii.** The paper towel dispenser exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

**n.** The facility fails to maintain the accessible features of the downstairs women's restroom that are required to be readily accessible to and usable by individuals with disabilities;

**o.** The facility provides a downstairs bar area for able-bodied individuals, but fails to provide an ADA accessible bar area for non-able-bodied individuals, including but not limited to the following elements:

        **i.** The restaurant does not provide any ADA accessible seating at the downstairs bar;

        **ii.** The top dining surface of the bar exceeds the maximum allowed height;

        **iii.** There is no ADA accessible bar counter or seating area at the bar that allows for the proper knee and toe clearance for a wheel chair user to be able to approach the bar;

        **iv.** The bar area floor mats are not stable, firm, or otherwise secured to the floor;

**p.** The restaurant provides seating at all portions of the dining areas for able-bodied individuals, but fails to provide 5% ADA accessible seating at all portions of the dining areas for non-able-bodied individuals;

[14]

q.   The facility fails to maintain the accessible features of the bar that are required to be readily accessible to and usable by individuals with disabilities;

**Access to Second Floor**

r.   The facility provides a route from the entrance to the second level dining area for able-bodied individuals, but fails to provide an ADA accessible route from the entrance to the second level dining area for non-able bodied individuals, including but not limited to:

  i.   The facility provides seating on the second floor that is served by stairs for able-bodied individuals, however there is no ADA accessible route to the second floor for individuals with disabilities;

  ii.  The handrails serving the stairs fail to extend 12 inches minimum directly above the first riser nosing;

  iii. The facility fails to maintain the accessible features of the second floor route that are required to be readily accessible to and usable by individuals with disabilities;

**Second Floor**

s.   The restroom entrance floor mats are not stable, firm, or otherwise secured to the floor;

t.   There is signage for able-bodied individuals designating a permanent interior space within the "restroom area" as the women's restroom,

however there is no signage displaying the International Symbol of Accessibility identifying the interior space within the restroom area as ADA accessible;

**u.** The door operating mechanism requires the use of tight grasping, twisting, and/or pinching of the wrist;

**v.** The facility provides toilet compartments for able-bodied individuals, but fails to provide an ADA accessible toilet compartment for non-able-bodied individuals, including but not limited to the following elements:

   **xiii.** The toilet compartment door locking mechanism requires tight grasping, twisting, and/or pinching of the wrist;

   **xiv.** The toilet compartment door fails to have door pulls located on both sides;

   **xv.** The toilet compartment door swings into the required maneuvering clearance around the water closet;

   **xvi.** When exiting the restroom there is not 18 inches of latch side clear floor space on the pull side of the door to give a wheelchair user the opportunity to approach the door;

   **xvii.** The toilet compartment fails to meet the required dimensions of 60 inches wide by 59 inches deep;

   **xviii.** The facility fails to provide a side wall grab bar in the toilet compartment;

[16]

       **xix.** The facility fails to provide a rear wall grab bar in the toilet compartment;

       **xx.** The facility provides a toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations at the facility

  **w.** The facility provides a lavatory for able-bodied individuals, but fails to provide an ADA accessible lavatory for individuals with disabilities, including but not limited to the following elements:

       **iv.** The lavatory sink counter top exceeds the maximum allowed height of 34 inches above the finished floor;

       **v.** The lavatory sink does not provide the required knee or toe clearance under the lavatory, which prohibits a wheelchair user from full and equal access to approach the lavatory;

       **vi.** The soap dispenser exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

  **x.** The current practice at this facility is to place a chair in the required clear floor space for a wheelchair user to be able to approach the baby changing table, which prohibits individuals with disabilities from full and equal access to the baby changing table;

[17]

y.  The facility fails to maintain the accessible features of the upstairs women's restroom that are required to be readily accessible to and usable by individuals with disabilities;

z.  The facility provides a upstairs bar area for able-bodied individuals, but fails to provide an ADA accessible bar area for non-able-bodied individuals, including but not limited to the following elements:

   i.  The restaurant does not provide any ADA accessible seating at the upstairs bar;

   ii.  The top dining surface of the bar exceeds the maximum allowed height of 36 inches above the finished floor;

   iii.  There is no ADA accessible bar counter or seating area at the upstairs bar that allows for the proper knee and toe clearance for a wheel chair user to be able to approach the seating;

aa.  The restaurant provides seating at all portions of the dining areas for able-bodied individuals, but fails to provide 5% ADA accessible seating at all portions of the dining areas for non-able-bodied individuals;

bb.  The facility fails to maintain the accessible features of the bar that are required to be readily accessible to and usable by individuals with disabilities;

21.  To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA. Remediation is readily achievable.

[18]

22. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. §12205.

23. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendants to modify their policies, practices, and procedures, to make reasonable accommodations to individuals with disabilities.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12182(b)(2)(A)(ii)
## (All Defendants)

24. Plaintiff re-alleges paragraphs 1-23 above.

25. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

26. By this Complaint, Plaintiff provides sufficient notice of her demand for an alteration in Defendants' policies, practices, and procedures.

27. The ADA is over twenty-five (25) years old. Defendants know they must comply

with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

28. Nevertheless, Defendants have permitted a multitude of architectural barriers to exist in both inside and outside the store for years.

29. Defendants either have no policies, practices, and procedures to comply with Title III of the ADA, or else they do not abide by them. That is self-evident because the Half Shell is grossly non-compliant. Although defendants surely did not try to do every single detail in a noncompliant manner, this ADA disaster could hardly have been worse if they had set out on purpose to make the restaurant noncompliant in every way. The rampant architectural barriers previously identified show that Defendants have failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers. Defendants' failure to provide full and equal use of the facilities especially its parking lot and accessible route to the entrance, not to mention access to the bathroom, and inaccessible sales and service counters plus the giant list of other barriers identified above prove that it has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices.

30. Defendants have failed to make reasonable modifications in their policies, practices, and procedures that are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure

that no individual with a disability is excluded, Defendants denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendants have discriminated against Plaintiff. Defendants will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

31. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, or procedures, or else they have failed to implement them, to ensure compliance at this facility with ADA Title III barrier removal, and to further effectuate that any barrier removal is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

32. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants' existing policies, practices, and procedures prevent the removal of ADA Title III barriers and do not effectuate the permanent removal of the barriers.

33. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants' existing policies, practices, and procedures both in effect and/or explicitly call for remediation of ADA Title III barriers only upon demand by the disabled and the policies lack or reject any initiative in compliance-seeking with ADA Title III barrier laws and regulations absent demand by the disabled. Defendants' existing policies, practices, and procedures will continue to discriminate against individuals with restricted mobility.

[21]

34. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, and procedures or else they failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its store as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Half Shell.

35. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

36. To date, the Defendants discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

37. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendants both create and adopt a corporate policy that Defendants (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are removed from Defendants' store consistent with the ADA; (2) Defendants will institute all practices, policies, and procedures required to implement Title III, ADA to both remove architectural

[22]

barriers and provide full use of their facilities for full and equal enjoyment; (3) Defendants will provide the disabled, including those with mobility limitations full and equal use of Half Shell; (4) Defendants will modify or replace the architectural barriers set forth in paragraph 20 to provide full and equal access to individuals with disabilities.

38. As pled above, SBD, LLC, "owns" and/or "leases [the property] to" the Half Shell, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

39. As pled above, Half Shell Oyster House Biloxi, LLC, Gulf Coast Restaurant, Inc., and Bob Taylor, "operate" the Half Shell restaurant, and are therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

40. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

41. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*
### *(All Defendants)*

42.  Plaintiff re-alleges paragraphs 1-41 above.

43.  42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

44.  Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

45.  In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

46.  The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

[24]

47. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

48. Defendants' acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

49. Plaintiff Hope Elly was denied full and equal access to the Half Shell establishment. Plaintiff specifically and definitely wants to return to the Defendants' establishment to enjoy all of the different experiences offered at Half Shell. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendants have failed to provide to Plaintiff as follows: Defendants failed to provide Plaintiff that same experience that non-disabled individuals have when dining at Half Shell; Defendants failed to provide Plaintiff the opportunity to transact business at the hostess service counter in the same manner as non-disabled individuals; Defendants failed to provide Plaintiff that same experience that non-disabled individuals have when at the when sitting at the bar both upstairs and downstairs having a drink; Defendants failed to provide Plaintiff that same dining experience that non-disabled individuals have when ordering food or drinks at the Half Shell establishment; Defendants failed to provide Plaintiff that same drinking and eating experience that non-disabled individuals have when dining and drinking on the second floor; Defendants failed to provide Plaintiff that same dining

[25]

experience that non-disabled individuals have when they are dining at the Half Shell restaurant which includes not being afforded the same seating areas; Defendants failed to provide the same experience by making it nearly impossible for the disabled to park and travel in the door to even get inside the restaurant; Defendants failed to maintain the accessible features of Half Shell that are required to be readily accessible to and usable by Plaintiff and others similarly situated, such as the maintaining the accessible routes to enter and travel throughout the store by failing to provide proper ADA accessible parking spaces and routes from the parking spaces to the establishment; Plaintiff was denied the full and equal service and experience of Half Shell; and Defendants failed to provide the required accessible restroom; and all the foregoing failures by Defendants inhibited Plaintiff from having the same experience that non-disabled individuals have when at the Half Shell establishment.

50.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facilities during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Half Shell.

51.   Defendants' conduct and Defendants' unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendants will continue to treat Plaintiff and others similarly situated unequally.

52. Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendants will continue to not maintain the required accessible features at Defendants' facility. 28 C.F.R. § 36.211(a).

53. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

54. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendants.

**WHEREFORE**, premises considered, Hope Elly demands judgment against the Defendants on Counts One through Three and request the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendants as well as all Defendants' illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendants to alter the facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and (v) and their implementing regulations, as stated in Count One;

[27]

3.   That the Court enter an order, in accordance with Count Two, directing the Defendants to modify their policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendants from operating its stores in violation of the ADA Title III in the future;

4.   That the Court enter an order directing the Defendants to provide Plaintiff full and equal access both to the Half Shell experience and to the use of Half Shell's facility, and further order Defendants to maintain the required accessible features at the store so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.   That the Court enter an Order directing the Defendants to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to plaintiff; and

7.   That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 27ᵗʰ Day of June, 2016.

/s/

**Bradley D. McAdory**
**BPR # MS-10545**
The ADA Group LLC
2047 Carter Hill Road
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
BDM@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 27th day of June, 2016 to the following:

**SBD, LLC**
**c/o Registered Agent**
**Attn.: Matthew Mestayer**
**160 Main Street**
**Biloxi, MS 39530**

**Half Shell Oyster House Biloxi, LLC**
**c/o Registered Agent**
**Attn.: Bob Taylor**
**4300 Air Cargo Road**
**Gulfport, MS 39501**

**Gulf Coast Restaurant Group, Inc.**
**c/o Registered Agent**
**Attn.: Bob Taylor**
**5 Bayou View Drive**
**Gulfport, MS 39507**

**Robert Taylor**
**4300 Air Cargo Road**
**Gulfport, MS 39501**

/s/_____

**Bradley D. McAdory**
**BPR # MS-10545**
The ADA Group LLC
2047 Carter Hill Road
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
BDM@ADA-Firm.com
*Attorney for the Plaintiff*

[30]